UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD BAKER, *et al.*,

                Plaintiffs,         Civil Action No. 22-11388

v.                                         Linda V. Parker
                                         United States District Judge

MARLA JONES, *et al.*,           David R. Grand
                                         United States Magistrate Judge

                Defendants.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS AND AMENDED MOTIONS TO DISMISS (ECF Nos. 24, 25, 30, 32) AND PLAINTIFFS' MOTION TO DISMISS (ECF No. 42), AND TO *SUA SPONTE* DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM**

*Pro se* plaintiffs Richard Baker and Kim Albright ("Plaintiffs") filed a 42 U.S.C. § 1983 complaint against State of Michigan Department of Health and Human Services ("MDHHS") employee Marna Miller ("Miller"), CSI Support & Development Services ("CSI") employees Marla Jones and Cindy Lamb ("CSI Defendants"), and three other individuals, "Alex," care nurse Roderick Hall, and Michael Polsinelli, for their alleged involvement in the issuance and recoupment of Food Assistance Program ("FAP") benefits that resulted in the "mishandling [of] important medical and other information" and "indifferen[ce] to [] serious medical needs." (ECF No. 1). Plaintiffs were granted permission to proceed *in forma pauperis* (ECF No. 4), and the case was referred to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636(b) (ECF No. 6).

On August 22, 2022, the CSI Defendants and defendant Miller each filed a separate

motion to dismiss. (ECF Nos. 24, 25). Instead of responding to these motions, on August 24, 2022, Plaintiffs filed a pleading entitled "Amended Complaint." (ECF No. 28). In turn, on September 7, 2022, the CSI Defendants and defendant Miller filed separate additional motions to dismiss Plaintiffs' "Amended Complaint. (ECF Nos. 30, 32). Plaintiffs filed a response to defendants' dispositive motions on October 11, 2022, (ECF No. 36), and the CSI Defendants and Miller filed separate replies. (ECF Nos. 39, 41).

On October 26, 2022, Plaintiffs filed a "Motion to Agree to Dismiss Amended Complaint and Move Forward with Original Complaint" (ECF No. 42), followed by a supplemental response to the defendants' original motions to dismiss (ECF No. 43). CSI Defendants then filed a response to Plaintiffs' motion. (ECF No. 44).

The Court finds that oral argument will not aid it in resolving the motions, and declines to hold a hearing. *See* E.D. Mich. LR 7.1(f)(2).

I.   **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that: (1) Plaintiffs' Motion to Voluntarily Dismiss the Amended Complaint **(ECF No. 42)** be **GRANTED**; (2) Miller's Motion to Dismiss the Amended Complaint **(ECF No. 30)** and the CSI Defendants' Motion to Dismiss the Amended Complaint **(ECF No. 32)** be **DENIED AS MOOT**; (3) and the CSI Defendants' Motion to Dismiss the Original Complaint **(ECF No. 24)** and Miller's Motion to Dismiss the Original Complaint **(ECF No. 25)** be **GRANTED**. **IT IS FURTHER RECOMMENDED** that Plaintiffs' claims against remaining defendants "Alex," Roderick Hall, and Michael Polsinelli be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B).

## II.   REPORT

### A.   Background

1. <u>Original Complaint</u>[1]

On June 18, 2022, Plaintiffs filed their original complaint, pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971), based on the defendants' alleged "mishandl[]ing [of] important medical and other information" and "being indifferent to [Baker's] serious medical needs," denying him "food, housing and other basic needs," and "causing [Baker's] medical condition to become infected" and at risk of losing his "legs and feet." (ECF No. 1, PageID.2). While the complaint is difficult to decipher, upon thorough review, the Court liberally construes Plaintiffs' allegations against the defendants as described below.[2]

*i.   Allegations against Defendant Miller*

As best as can be discerned, the complaint alleges that, on February 9, 2017, Baker had a hearing at the "DHS Grey Dale District," during which he was "found [] guilty of failure to provide complete information about felony drug conviction resulting in an over-issuance of [FAP payments]." (*Id.*, PageID.9). The "total overpayment" amount was found to be $2,522.00 during the period of November 1, 2014 to November 30, 2015. (*Id.*). In order to recoup these overpayments, the MDHHS allegedly started withholding $110 on the "3rd of each month" and $125 on the "11th of each month" from his Social Security

---

[1] The Court notes that the complaint is devoid of any allegations with respect to plaintiff Kim Albright or defendant Michael Polsinelli.

check. (*Id.*).

Three years later, in April 2020, Baker's "SSI Payments" of $783 per month were allegedly "stopped" and "changed to SSDA" payments. (*Id.*, PageID.9). Around that same time, he also "received a[n] envelope full of papers from MDHHS containing [his] DHS history and other documents from someone in Grand Rapids Mich. who had used [his] ID falsely." (*Id.*). As a result, Baker called MDHHS and spoke to Miller "from the Dispute Unit," whom he describes as the "the lady that answers the phone when you call that 1-800 number." (*Id.*, PageID.9-11). Miller allegedly told him to "mail the information to the Dispute Unit along with some medical information from Star Drug Treatment Program," and although Baker did as he was instructed, he did not hear back from Miller for months. (*Id.*).

About two years later, in May 2022, Baker allegedly spoke to Miller on the phone again to ask her about the status of the "hardship forms she had [him] mail to her." (*Id.*, PageID.7). Miller knew about Baker's "medical condition" because he "told her about [his] having a stroke and nervous breakdown," but she "ignored" his medical situation and told him that "MDHHS were only taking $124" and that "the treasury service was taking the other additional $139." (*Id.*, PageID.7-8, 10). Baker also gave Miller a "document from Ascension Investigation Department confirming that [his] identity had been stolen," but she merely responded, "That's just junk mail and everybody gets that," and "Why don't you just write a letter and make some kind of payment agreement." (*Id.*, PageID.10-11). He alleges that he "truly believes that [Miller] destro[y]ed the documents [he] sent her because it had information showing that 2 drug charges [were] dismissed through a plea

4

agreement into a drug program and 5 years probation." (*Id.*, PageID.10).

> ## ii. Allegations against the CSI Defendants and "Alex"

As to the CSI Defendants, the complaint alleges that, on December 15, 2021, Baker was on CSI's "waiting list" and spoke on the phone with Marla Jones ("Jones") from CSI's Development Services. (*Id.*, PageID.6). Jones told him that there were "some handicap units available" and that he "need[ed] to send a copy" of certain documents along with his application, including a copy of his Social Security card, medical info, state identification, financial information, and a Benefit Verification Letter from the Social Security Administration. (*Id.*). About one week later, Baker "received a letter den[y]ing [his] application with a phone [number] to the Appeals Department." (*Id.*). He immediately called Jones and "told her to send [him] back all of [his] information ASAP," and Jones "said ok." (*Id.*). When Baker called back to "make sure it had been done," Jones told him she had "shredded it." (*Id.*). Baker then called the Appeals Department, and "a lady name[d] Alex" told him that "the decision is final" without telling him why he "was denied in the first place." (*Id.*). Baker eventually called "Sen. Peters Office to get help," and Cindy Lamb ("Lamb") "sent them a[n] e-mail giving [] false information about having a conversation with [Baker] about removing items from [his] criminal record." (*Id.*).[3]

---

[3] Attached to Plaintiffs' response to defendants' motion to dismiss is what appears to be the copy of the e-mail from Lamb, which states in part, "Mr. Baker's application for Meyers Plaza Co-op was denied due to failure to meet the applicant screening requirements for criminal history. He called to appeal the decision and left a message that he was working with the congressman's office to get items removed from his criminal record. . . . Mr. Baker did not provide documentation regarding removal of items from his criminal record by February 10, 2022, and his application remained denied. . . . On March 8, 2022, Mr. Baker left a message claiming he has confirmation of false information against him, stating that there is identity theft, and he wants his application to be reconsidered. . . . Mr. Baker was left a message stating that he should request in writing that his

*iii. Allegations against Defendant Hall*

Plaintiffs allege that Baker had been "treated at Providence Hospital for about 10 years," and that the hospital "set up home care nursing." (ECF No. 1, PageID.8). As far as their issues with Care Nurse Roderick Hall ("Hall") from Maple Home Health Care Nursing, Plaintiffs allege that Hall "came by [Baker's] house two times without suppl[ies] for [his] dressing change and it was like a drive by just to get [him] to sign a document so [Hall] could get paid for basically nothing." (*Id.*). Baker allegedly has a "very serious infection in [his] feet right now because [he's] not getting home care and [he's] living in a[n] infectious environment." (*Id.*).

Based on all of the above allegations, Plaintiffs claim that the "MDHHS have made it impossible for [Baker] to heal from a lack of nutrition by denying [him] food assistanc[e] and den[y]ing [his] hardship request and taking more funds from [his] [Social Security] check than [he] can afford to pay." (*Id.*, PageID.3). They also allege that MDHHS "have been ignoring [Baker's] complaints about [his] ID being stolen and used in other states and as far as Mexico." (*Id.*). He clarifies that the "basis" for his claim is "the undermining of [his] medical condition and the ignoring [of] [his] complaints about [his] ID being stolen and using false information to justify depriving [his] civil rights and to force [him] to pay debts that are not [his]." (*Id.*, PageID.4). He also claims he suffered injuries in the form of a "stroke," a nervous breakdown, an infection to his feet that required "amputation

---

application be reopened and that he should submit his documentation regarding false criminal information. Currently, Mr. Baker's application is open pending receipt of these items." (ECF No. 36, PageID.208).

6

prevention," and denial of handicap housing. (*Id.*, PageID.4). As a result, he seeks monetary damages and the "[r]emov[al] [of] all the flags that's causing [his] civil rights to be violated." (*Id.*).

Both the CSI Defendants and Miller filed separate motions to dismiss, arguing in relevant part that Plaintiffs failed to state a claim against them. (ECF Nos. 24, 25).

2. "Amended Complaint"

On August 24, 2022, two days after the defendants filed their motions to dismiss the original complaint, the Court docketed Plaintiffs' "Amended Complaint." (ECF No. 28). Although entitled an "Amended Complaint," it appears to be an entirely new complaint, against new defendants, who are alleged to have engaged in new conduct that is unrelated to the conduct at issue in Plaintiffs' original complaint in this case.

For example, the Amended Complaint makes allegations against the "Star Center" for disregarding "Orders" from the "Director of the Wound Care at Providence Hospital" to "stop making [Baker] stand outside in long lines in freezing [cold] and hot weather to be medicated and to [allow him] to receive take home meds . . ." (ECF No. 28, PageID.116). There are allegations that Baker attempted to pick up his medications in July 2022 when a man named "Greg" ambushed him, confronted him for "not having insurance from 1-1-22 to 6-30-22," and told him he "owed them a lot of money," despite the fact that his insurance provider, Humana, mistakenly placed him on the wrong insurance plan. (*Id.*, PageID.116-18). Plaintiffs also allege that a "John Jackson" denied Baker a "dose increase" of medication, and that the Star Center "refused to accept the payment" and instead "chose to undermine[]" his medical needs and pain and suffering. (*Id.*, PageID.119-

7

22).  Finally, there are allegations against a "Dr. Delva" who had been treating Plaintiffs "for about 3 years," during which time Dr. Delva allegedly refused to give them pain medication without first taking "physical therapy."  (*Id.*, PageID.124-26).

In response to Plaintiffs' new filing, the CSI Defendants and Miller each separately filed additional motions to dismiss the Amended Complaint, arguing that they should be dismissed from the case because the Amended Complaint does not assert claims against them.  (ECF Nos. 30, 32).  Subsequently, Plaintiffs filed a "Motion to Agree to Dismiss Amended Complaint and Move Forward with Original Complaint" as a "response to defendants['] motion to dismiss Amended Complaint."  (ECF No. 42, PageID.273-74).

**B.     Standards of Review**

1. <u>Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6)</u>

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556.  Put another way, the complaint's allegations "must

do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

2. Motion for Voluntary Dismissal under Fed. R. Civ. P. 41(a)(2)

Fed. R. Civ. P. 41(a) governs voluntary dismissal in federal court. A plaintiff is permitted to voluntarily dismiss an action, without prejudice, without a court order: (1) by filing an appropriate notice, if the adverse party has not filed an answer or a motion for summary judgment; or (2) by filing a "stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A). However, once a defendant has served an answer to the complaint or filed a motion for summary judgment, and in the absence of a filed stipulation, the plaintiff is required to seek an order of the court to voluntarily dismiss his suit. Fed. R. Civ. P. 41(a)(2). The court may grant a request for voluntary dismissal "on terms that the court considers proper," and unless the order states otherwise, a dismissal is without prejudice. *Id.*

Whether to permit a plaintiff to voluntarily dismiss his case is a matter committed to the court's discretion. *See Banque de Depots v. Nat'l Bank of Detroit*, 491 F.2d 753,

9

757 (6th Cir. 1974). An "abuse of discretion is found only where the defendant would suffer plain legal prejudice as a result of a dismissal without prejudice …." *Bridgeport Music, Inc. v. Universal-MCA Music Publ'g, Inc.*, 583 F.3d 948, 953 (6th Cir. 2009) (quotations omitted). Thus, "a district court should [ordinarily] grant a motion for voluntary dismissal unless a defendant can show that it will suffer some plain legal prejudice as a result." *Quiktrak, Inc. v. Hoffman*, No. 1:05-CV-384, 2005 WL 2465735, at *2 (W.D. Mich. Oct. 6, 2005) (quotations omitted).

### C. Analysis

1. <u>Plaintiffs' Motion to Agree to Dismiss Amended Complaint (ECF No. 42), and the CSI Defendants' and Miller's Motions to Dismiss Amended Complaint (ECF Nos. 30, 32)</u>

As noted above, *pro se* Plaintiffs' "Amended Complaint" alleged no facts or claims against the CSI Defendants or Miller, but instead raised entirely new claims against new defendants. Since "[a]n amended complaint supersedes an earlier complaint for all purposes," *Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014) (quotation and citation omitted), the CSI Defendants and Miller moved to be dismissed from the case, essentially arguing that they were no longer parties to the action. (ECF Nos. 30, 32). Plaintiffs then filed their own "Motion to Agree to Dismiss Amended Complaint and Move Forward with Original Complaint" on October 26, 2022. (ECF No. 42, PageID.273). Plaintiffs state nothing more in that motion except that it was filed in "response to defendants['] motion to dismiss Amended Complaint." (*Id.*, PageID.274). Accordingly, the Court reads Plaintiffs' filing as a motion to voluntarily dismiss without prejudice the Amended Complaint in this case so that they can proceed against the defendants named in their

10

original complaint. However, because there is no filed stipulation for voluntary dismissal, and both CSI Defendants and defendant Miller filed motions to dismiss the Amended Complaint, Plaintiffs may only voluntarily dismiss this Amended Complaint "by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2).

In response to Plaintiffs' motion, the CSI Defendants represent that "Defendants Jones and Lamb have no objection to reinstating Plaintiffs' original Complaint," and that the original complaint "still must be dismissed" against them for failure to state a claim, as argued in their initial motion to dismiss. (ECF No. 44, PageID.283). Defendant Miller did not specifically respond to Plaintiffs' motion, but her response to another of Plaintiffs' filings similarly acknowledges Plaintiffs' attempt to withdraw their Amended Complaint. (*See* ECF No. 50, PageID.311) (referring to "the Amended Complaint filed on August 24, 2022 (ECF No. 28) (which was withdrawn on October 26, 2022 (ECF No. 42)"). Moreover, defendants have not shown that they will suffer "some plain legal prejudice as a result" of granting a voluntary dismissal of the Amended Complaint without prejudice. *Quiktrak, Inc.*, No. 1:05-CV-384, 2005 WL 2465735, at *2.

Because all concerned parties appear to agree to the dismissal of Plaintiffs' Amended Complaint, Plaintiffs' Amended Complaint should be dismissed from this case without prejudice. Fed. R. Civ. P. 41(a)(2). Should Plaintiffs wish to pursue the claims raised in the Amended Complaint, they must do so in a separate action against the appropriate defendants.

Moreover, because the Court recommends granting the voluntary dismissal of Plaintiffs' Amended Complaint without prejudice, the CSI Defendants' motion to dismiss

11

the Amended Complaint (ECF No. 30), and Miller's motion to dismiss the Amended Complaint (ECF No. 32) should be denied as moot.

Given the foregoing, the Court now addresses the remaining issue of whether Plaintiffs' original complaint is subject to dismissal.

2. CSI Defendants' Motion to Dismiss Original Complaint (ECF No. 24)

In their motion, the CSI Defendants argue that Plaintiffs "fail[ed] to articulate facts concerning any misconduct by Defendants, much less state any claim against them," as Plaintiffs did not identify any particular legally cognizable right that was violated by CSI's denial of Baker's affordable home application. (ECF No. 24, PageID.57). More fundamentally, the CSI Defendants contend that Plaintiffs failed to state § 1983 or *Bivens* claims as a matter of law because they "are employees of a private non-profit organization (CSI Cooperative Services) that provides affordable housing to seniors and for younger persons who are physically disabled and in need of specially designed housing for the mobility impaired," and the complaint did not allege that either Jones or Lamb were acting as "state or local officials," nor as "federal employees acting under color of their federal authority." (*Id.*, PageID.59-61) ("Neither [Jones or Lamb] are state or local government employees" and "have no formal or official connection with the federal governments in regards to their work at CSI"). The Court agrees that Plaintiffs' claims against the CSI Defendants are subject to dismissal.

Plaintiffs' complaint fails as a matter of law because it does not allege that the CSI Defendants are "state actors" under § 1983, or "federal employees acting under color of federal law" under *Bivens*. To state a claim for relief under § 1983, "a plaintiff must allege

12

a violation of a right secured by the federal Constitution or laws and must show that the violation was committed by a person acting under color of state law." *Wershe v. Combs*, 763 F.3d 500, 504-05 (6th Cir. 2014) (citations omitted). Thus, state action is an essential element of any § 1983 claim against any defendant. *See American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 58 (1999).

Here, Plaintiffs do not contend that the CSI Defendants are state actors, much less allege any facts that their conduct related to the denial of Baker's application for affordable housing is in any respect attributable to the state. Indeed, there is nothing in the record to suggest that CSI, as a private non-profit organization providing affordable housing to physically disabled persons, qualifies as a state actor. *See, e.g.*, *Howell v. Father Maloney's Boys' Haven, Inc.*, 976 F.3d 750, 753 (6th Cir. 2020) (holding that a private entity providing housing, education, treatment, and crisis stabilization for at-risk youth were not state actors); *Hodges v. Metts*, 676 F.2d 1133, 1137 (6th Cir.1982) ("One cannot seriously contend that the provision of low- and moderate-income housing is exclusively a public enterprise."); *Kilgore v. Konczal*, No. 1:12-CV-966, 2012 WL 5604819, at *3 (W.D. Mich. Nov. 15, 2012) ("the provision of affordable housing is not a public function traditionally reserved to the state"); *Blackwell v. Allen*, No. 22-1300, 2022 WL 17832191, at *4 (6th Cir. Dec. 21, 2022) (citing *Cruz-Arce v. Mgmt. Admin. Servs. Corp.*, 19 F.4th 538, 545 (1st Cir. 2021) (holding that a private company contracted to run a low-income housing project was not a state actor under the public-functions test because "the provision of low-income housing has never been exclusive to the government")).

Likewise, Plaintiffs' *Bivens* claim fails as a matter of law, as courts have recognized

13

that there is no private right of action under *Bivens* for damages against private entities. *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001) ("The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations"); *see also, e.g.*, *Minneci v. Pollard*, 565 U.S. 118 (2012) (*Bivens* does not apply to employees of a private prison who are not federal officers even when operating under contract with the federal government).

In sum, because Plaintiffs failed to allege that the CSI Defendants are "state actors" or "federal employees acting under color of federal law," their § 1983 and *Bivens* claims against the CSI Defendants fail as a matter of law, and such claims should be dismissed.

### 3. Defendant Miller's Motion to Dismiss Original Complaint (ECF No. 25)

In her motion, Miller contends that Plaintiffs fail to "cite any constitutional or statutory provision that [she] allegedly violated," and fail to allege any facts that would turn the MDHHS' recoupment of a judicially-determined over-issuance of FAP benefits after an administrative hearing into a statutory or constitutional violation. (ECF No. 25, PageID.92). Miller contends that Baker simply alleges no facts that "connect [her] involvement with the crux of his grievance, i.e., that MDHHS was permitted to recoup an overissuance of his FAP benefits." (*Id.*, PageID.93-94).[4]

Here, Plaintiffs' *Bivens* claims against Miller fail as a matter of law because she is not a federal actor, but a state actor employed by the MDHHS. *Correctional Servs. Corp.*,

---

[4] Miller also makes arguments based on the statute of limitations and immunity. (ECF No. 25, PageID.94-101). However, because the Court's analysis below is a sufficient basis to dismiss all claims against her, it declines to address these alternative arguments.

534 U.S. at 71. Plaintiff's § 1983 claims are also subject to dismissal, as the complaint fails to allege that Miller was *personally* involved in any alleged constitutional deprivations.

In order to demonstrate liability under 42 U.S.C. § 1983 as to any particular defendant, a plaintiff must first establish that that defendant acted under color of state law and that his actions violated rights secured by the Constitution and/or laws of the United States. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979). The plaintiff must also make a clear showing that each defendant was personally involved *in the activity that forms the basis of the complaint*. *See Rizzo v. Goode*, 423 U.S. 362, 377 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

A review of Plaintiffs' complaint makes clear that Baker received an administrative hearing in February 2017, during which he was "found [] guilty of failure to provide complete information about felony drug conviction resulting in an over-issuance of [payments from] the [Food Assistance Program ("FAP")]." (ECF No. 1, PageID.9). Based on this finding, the MDHHS began recouping overpayments via certain deductions from Baker's Social Security payments. (*Id.*). However, in addition to there being no indication that the recoupment of the overpayments was in any way unlawful, there are no allegations in Plaintiffs' complaint showing that *Miller* played any role in the challenged conduct. To the contrary, the complaint explicitly alleges that it was not until April 2020 – *three years after* the administrative hearing and guilty finding – that Baker called the "Dispute Unit" and first spoke to Miller, who, Baker admits, was merely "the lady that answers the phone when you call that 1-800 number." (*Id.*, PageID.9-11).

15

To the extent Plaintiffs allege that Miller overlooked Baker's mailing of a "hardship form," disregarded a document confirming that his identity had been stolen, or ignored his "medical situation," his complaint fails to allege facts demonstrating that Miller had the authority to address any of these issues, much less that her alleged actions or inactions amounted to a statutory or constitutional violation.[5]  (ECF No. 1, PageID.7-8, 10-11; *see also* ECF No. 36, PageID.171 (Plaintiffs' conclusory assertion in their response brief that "[Miller] could have help[ed] me in more ways than one, that's her job, that's what she do[es].  She discriminated against me and didn't consider my medical issues[,] my identity theft[,] my over payment of the 2,522 dollars, the world wide pandemic, my family crisis.")).  The same applies to Plaintiffs' vague allegation that Baker "truly believes" Miller, for an unknown reason, destroyed documents showing "2 drug charges [were] dismissed through a plea agreement" (*id.*, PageID.10), which, in any case, appears to have no bearing on the prior administrative hearing decision made three years earlier finding that Baker did in fact have at least two drug convictions resulting in overpayment and necessitating recoupment.[6]

---

[5] The Court also notes that attached to Plaintiffs' response to defendants' motions to dismiss is a letter from U.S. Congresswoman Rashida Tlaib's office dated December 9, 2021, which states in part, "Our office confirmed with MDHHS that you pled guilty to drug felony charges from instances occurring on 10/20/04 and 2/28/07.  In reviewing your case, MDHHS determined that you received an overpayment of FAP benefits during the period of 11/2014 to 11/2015, when the two drug-related felony policy was in place.  Our office inquired if there was a way to cancel the overpayment since the ban on felony convictions has been changed recently under the state's budget.  MDHHS advised that they are unable to overturn the decision since the overpayment timeframe is supported by the policy that was in place at that time.  The policy change lifting the FAP eligibility ban did not start until 10/1/20."  (ECF No. 36, PageID.225).

[6] Also attached to Miller's motion to dismiss is a copy of the administrative hearing decision dated November 16, 2017, which states in part, "People convicted of certain crimes . . . are not eligible

16

In conclusion, although Plaintiffs may have raised allegations that take issue with the manner in which Miller responded to Baker's attempts to resolve his "dispute" concerning the MDHHS's recoupment of overpaid FAP benefits, they wholly fail to show how any of her specific alleged actions violated a statutory or constitutional right. Accordingly, Plaintiffs' claims against Miller fails as a matter of law and, thus, should be dismissed.

### 4. Dismissal of Claims against Defendants "Alex," Roderick Hall, and Michael Polsinelli under 28 U.S.C. § 1915(e)(2)(B)

Once a complaint is filed *in forma pauperis* under 28 U.S.C. § 1915(a), the court must test its sufficiency under § 1915(e)(2)(B), which provides that a court "shall dismiss" an *in forma pauperis* complaint "at any time" if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B); *see*

---

for assistance. . . . [Baker] has two felony drug convictions after August 22, 1996, involving the possession, use, or distribution of controlled substances. In the first case, [Baker] pled guilty on November 19, 2004, to Controlled substances—delivery or manufacturing of a narcotic or cocaine less than 50 grams. In a second case, [Baker] pled guilty on June 13, 2007, to two counts of possession of a controlled substance . . . At the time of [Baker's] November 7, 2014, completed Redetermination, [he] [] left both questions related to Felony Drug Convictions blank. . . . When a client group receives more benefits than entitled to receive, the Department must attempt to recoup the [overissuance]. . . . In this case, the Department alleged that [Baker] was issued FAP benefits in the amount of $2,522.00 between November 1, 2014, and November 30, 2015, and that due to his drug-related felony convictions, he was ineligible for any FAP benefits during this period. A review of the FAP benefit summary inquiry presented by the Department supports benefits issued in the amount alleged. [] While the Department did not carry its burden to show an [intentional program violation], it has shown that [Baker] was convicted of two felony drug convictions after August 22, 1996. Therefore, the Department is entitled to recoup $2,522.00 from [Baker], which is the difference between the amount of FAP benefits actually issued to him and the amount he was eligible to receive during the fraud period . . . . The Department is ORDERED to initiate recoupment/collection procedures for the amount of $ 2,522.00 in accordance with Department policy." (ECF No. 25-1, PageID.108-10).

17

*also Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (noting that while Congress enacted 28 U.S.C. § 1915 to "ensure that indigent litigants have meaningful access to the federal courts," it also "recognized . . . that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.").

Here, the Court finds that Plaintiffs have failed to state a claim against defendants "Alex," Hall, and Polsinelli and, thus, Plaintiffs' claims against those individuals are subject to dismissal under § 1915(e)(2)(B). First, because Plaintiffs' allegations indicate that "Alex" works for the "Appeals Department" of CSI, they failed to state a valid § 1983 or *Bivens* claim against an employee of a private entity, as discussed above with respect to the CSI Defendants.[7] (*See* ECF No. 1, PageID.6). Similarly, Plaintiffs' claims against defendant Hall fail as a matter of law where the complaint indicates that Hall is not a state or other governmental actor, but rather is a care nurse employed by the private entity, Maple Home Health Care Nursing. (*See id.*, PageID.8); *Wershe*, 763 F.3d at 504-05; *Correctional Servs. Corp.*, 534 U.S. at 71. Plaintiffs' complaint is also devoid of any allegations that Hall's conduct in twice failing to bring dressing change supplies during

---

[7] The Court also notes that attached to Plaintiffs' response is a letter from "Alex Munday" of the CSI's Appeals Department, which states, "The purpose of this letter is to respond to the documentation you recently submitted regarding your application for Meyers Plaza Co-op. Unfortunately, this documentation is not sufficient to re-open your case for appeal. If you have any questions regarding this final decision, you may reach the Appeals Department . . ." (ECF No. 36, PageID.206). In any case, Plaintiffs' allegations against "Alex" amount to a single sentence that wholly fails to assert any facts giving rise to a statutory or constitutional violation. (*See* ECF No. 1, PageID.6) ("[Baker] called the number for an appeal and a young lady name[d] Alex called [him] back and [Baker] told her [he] request[ed] to appeal so [he] can present some addi[t]ional medical information and she told me that the decision is final[] without stating why [he] was denied in the first place.").

home care is in any respect attributable to the state or federal government. Finally, despite naming Polsinelli in this suit, Plaintiffs fail to include any specific allegations about him, let alone any that amount to a violation of their rights. *See Bright v. Thompson*, 467 F. App'x 462, 464 (6th Cir. 2012) ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Accordingly, Plaintiffs' claims against defendants "Alex," Hall, and Polsinelli should also be dismissed for failure to state a claim under § 1915(e)(2)(B).

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Plaintiffs' Motion to Voluntarily Dismiss the Amended Complaint **(ECF No. 42)** be **GRANTED** and the Amended Complaint be dismissed without prejudice; the CSI Defendants' and Millers' Motions to Dismiss the Amended Complaint **(ECF Nos. 30, 32)** be **DENIED AS MOOT**; and the CSI Defendants' and Millers' Motions to Dismiss the Original Complaint **(ECF Nos. 24, 25)** be **GRANTED**. **IT IS FURTHER RECOMMENDED** that Plaintiffs' claims against remaining defendants "Alex," Hall, and Polsinelli be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B).

Dated: January 17, 2023　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and

19

recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2). A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 17, 2023.

                                                  s/Eddrey O. Butts
                                                  EDDREY O. BUTTS
                                                  Case Manager